ACCEPTED
03-14-00402-CR
5216340
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/8/2015 3:25:49 PM
JEFFREY D. KYLE
CLERK

## No. 03-14-00402-CR

In the
**COURT OF APPEALS**
For the
**THIRD SUPREME JUDICIAL DISTRICT**
at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/8/2015 3:25:49 PM
JEFFREY D. KYLE
Clerk

_____

On Appeal from the 26th Judicial District Court of
Williamson County, Texas
Cause Number 13-0481-K26

_____

**REX ALLEN NISBETT, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

_____

**APPELLANT'S BRIEF**

_____

*Counsel for Appellant*
*Rex Allen Nisbett*

**KRISTEN JERNIGAN**
ATTORNEY AT LAW
STATE BAR NUMBER 90001898
207 S. AUSTIN AVE.
GEORGETOWN, TEXAS 78626
(512) 904-0123
(512) 931-3650 (FAX)
Kristen@txcrimapp.com

**ORAL ARGUMENT REQUESTED**

## IDENTIFICATION OF PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.1, a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case.

**Appellant:**

Rex Allen Nisbett

**Counsel for Appellant**:

Keith Lauerman (at trial)                    Robert McCabe (at trial)
107 N. Lampasas                              207 S. Austin Ave.
Round Rock, Texas 78664                      Georgetown, Texas 78626

Kristen Jernigan (on appeal)
207 S. Austin Ave.
Georgetown, Texas 78626

**Counsel for Appellee, The State of Texas:**

Jana Duty (at trial)
Williamson County District Attorney
Mark Brunner (at trial)
John Prezas (on appeal)
Assistant District Attorneys
405 Martin Luther King
Georgetown, Texas 78626

**Trial Court Judge:**

The Honorable Billy Ray Stubblefield

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . .vi

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

ARGUMENT & AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    1.     The evidence is insufficient to show Appellant committed the offense of murder.

    2.     The prosecutor violated Appellant's right to remain silent during jury argument.

    3.     The prosecutor violated Appellant's right to remain silent during questioning of the lead detective in this case.

    4.     The State violated Article 39.14 of the Texas Code of Criminal Procedure by failing to give proper notice of an expert witness.

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

CERTIFICATE OF WORD COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

iii

# INDEX OF AUTHORITIES

## CASES

*Angel v. State*, 627 S.W.2d 424 (Tex. Crim. App. 1982) . . . . . . . . . . . . . .20, 21, 22

*Bell v. State*, 724 S.W.2d 780 (Tex. Crim. App. 1986) . . . . . . . . . . . . . . . . . . . . 19

*Brooks v. State*, 323 S.W.3d 893, 896 (Tex. Crim. App. 2010) . . . . . . . . . . . .14, 18

*Cannon v. State*, 668 S.W.2d 401 (Tex. Crim. App. 1984) . . . . . . . . . . . . . . 19, 20

*Felder v. State*, 848 S.W.2d 85 (Tex. Crim. App. 1992) . . . . . . . . . . . . . . . . . . 19

*Garrett v. State*, 632 S.W.2d 350 (Tex.Crim.App. 1982) . . . . . . . . . . . . . 20, 22, 23

*Hacker v. State*, 389 S.W.3d 860 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . .15

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . 14

*Jackson v. Virginia*, 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 18

*Johnson v. State*, 611 S.W.2d 649 (Tex. Crim. App. 1981) . . . . . . . . . . . .20, 21, 22

*King v. State*, 953 S.W.2d 266 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . .25

*Kotteakos v. United States*, 328 U.S. 750 (1946) . . . . . . . . . . . . . . . . . . . . . . . .25

*Losada v. State*, 721 S.W.2d 305 (Tex. Crim. App. 1986) . . . . . . . . . . . . .20, 21, 22

*Malloy v. Hogan*, 378 U.S. 1 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Megan Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013) . . . . . . . . . 14, 17

*Nickens v. State*, 604 S.W.2d 101 (Tex.Crim.App. 1980) . . . . . . . . . . . . . 20, 22, 23

*Owen v. State*, 656 S.W.2d 458 (Tex. Crim. App. 1983) . . . . . . . . . . . . . . . . . . .20

*Richard Winfrey v. State*, 323 S.W.3d 875 (Tex. Crim. App. 2010) . . . . . . . . 14, 15

*Stobaugh v. State*, 421 S.W.3d 787 (Tex. App.—Fort Worth, 2014) . . . . . . . .14, 17

*Wesbrook v. State*, 29 S.W.3d 103 (Tex. Crim. App. 2000),
      *cert. denied*, 532 U.S. 944 (2001) . . . . . . . . . . . . . . . . . . . . . . 19

## STATUTES AND RULES

TEX. CODE CRIM. PRO. Art. 38.08 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 22, 23

TEX. CODE CRIM. PRO. Art. 39.14(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

TEX. CONST. Art. I, § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 21, 22, 23

TEX. PENAL CODE § 19.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TEX. R. APP. P. 21.8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

TEX. R. APP. P. 33.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TEX. R. APP. 44.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

U.S.CONST. AMEND. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 21, 22, 23

**STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Texas Rule of Appellate Procedure 39.1, Appellant requests oral argument in this case.

**No. 03-14-00402-CR**

In the
**COURT OF APPEALS**
For the
**THIRD SUPREME JUDICIAL DISTRICT**
at Austin

_____

On Appeal from the 26th Judicial District Court of
Williamson County, Texas
Cause Number 13-0481-K26

_____

**REX ALLEN NISBETT, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

_____

**APPELLANT'S BRIEF**

_____

**STATEMENT OF THE CASE**

On March 21, 2013, Appellant was indicted for the felony offense of murder, alleged to have been committed on or about December 14, 1991. (CR: 10). On June 11, 2014, a jury found Appellant guilty of the offense of murder as alleged in the indictment. (CR: 194, 258). The jury assessed Appellant's punishment at forty-two years in prison. (CR: 194). Appellant timely filed Notice of Appeal on June 16, 2014. (CR: 253). On July 10, 2014, Appellant filed a Motion for New Trial. (SCR: 3). The motion was overruled by operation

1

of law seventy-five days later. *See* TEX. R. APP. P. 21.8. This appeal results.

## STATEMENT OF FACTS

Carol Johnson testified that she is the mother of Vicki Lynn Nisbett, the alleged victim in this case, and that Vicki was married to Appellant at the time she disappeared in 1991. (RR8: 39-40). Vicki and Appellant were going through a divorce. (RR8: 40). Johnson stated that she had not seen or heard from Vicki since December of 1991 and that she would not have left her children behind. (RR8: 46-47).

Julie Tower, Vicki's co-worker, testified that she knew Vicki for approximately a year before she went "missing." (RR8: 65). On December 14, 1991, the two had plans to attend their company's Christmas party. (RR8: 65). Tower called Vicki at 2:30 p.m. and according to Tower, Vicki sounded upset because she and Appellant had been arguing. (RR8: 65-66). Tower heard Appellant and Vicki arguing and Vicki told Tower that Appellant had choked her. (RR8: 66). Tower called again at 5:30 p.m. and Appellant answered the phone. (RR8: 67). Tower told the jury that Appellant stated that Vicki had already left to go to the party or to go to her apartment. (RR8: 67). Tower called thirty minutes later and Appellant stated Vicki had gone straight to the party. (RR8: 67). The next day, Appellant called Tower and asked where Vicki was. (RR8:

2

68).

Wayne Castleberry told the jury that he met Vicki in 1991 at a nightclub and the two exchanged phone numbers. (RR8: 74-76). When he called her the next day, Appellant answered the phone. (RR8: 76). Castleberry spoke with Vicki the next day and they had lunch the following Monday. (RR8: 77). They kept in contact and on December 14, 1991, Castleberry spoke to Vicki on the phone once in the morning and once between 5:00 p.m. and 6:00 p.m. (RR8: 79). During the second phone call, a man picked up another phone and told Vicki to get off of the phone, which she did. (RR8: 80). Vicki was supposed to call him after the Christmas party but he never heard from her. (RR8: 80-81).

David Proctor testified that on December 16, 1991, he was a patrol deputy with the Williamson County Sheriff's Office and was dispatched to a missing persons call. (RR8: 87-88). Proctor spoke with Appellant who indicated Vicki was to have attended a Christmas party on December 14, 1991, while he watched their children, and she was to have returned the next day but never did. (RR8: 89). Appellant was "very forthcoming" in answering Proctor's questions and allowed Proctor to look around the apartment. (RR8: 96). Appellant stated that he and Vicki had been in an argument and that she had initiated a physical altercation so he pushed her away. (RR8: 97). Appellant reported to Proctor

3

that Vicki left the apartment shortly after and was depressed. (RR8: 97). On cross-examination, Proctor admitted that when Appellant allowed Proctor to search the apartment, Proctor never saw any blood or blood spatter. (RR8: 98-99).

Jerry Fryer, Jr., stated that in December of 1991 he was a pastor at Trinity Christian Center. (RR8: 103). Fryer told the jury that he counseled Appellant and Vicki and that two days before she went missing, he met with Vicki who was crying and fearful. (RR8: 110).

Richard Elliott of the Williamson County Sheriff's Office related that on December 16, 1991, Appellant and a co-worker phoned the Sheriff's Office to report Vicki missing. (RR8: 115). Appellant voluntarily appeared at the Sheriff's Office and gave a statement in which he related that he was living with Vicki even though they were getting a divorce. (RR8: 120-21). Appellant acknowledged that he and Vicki had an argument on December 14, 1991, that he had pushed her away after she approached him, and that she left for a Christmas party that evening. (RR8: 121-22). Appellant thought that Vicki may have run off with another man since she had done that before. (RR8: 122). After Appellant moved out of the apartment he shared with Vicki, Elliott had the Department of Public Safety Crime Lab search for evidence inside the apartment. (RR8: 138-39). Pieces of carpet and sheetrock were collected. (RR8: 146). In

4

February of 1992, Vicki's car was located in an HEB parking lot. (RR8: 149). On cross-examination, Elliott admitted that "Vicki's car" actually belonged to both Appellant and Vicki and that the evidence collected from Vicki's car had been lost over the years so it could not be tested for DNA. (RR8: 166-68). Elliott admitted further that he did not seek a search warrant for Castleberry's car or home and did not conduct surveillance on anyone other than Appellant. (RR8: 169-70). Elliott acknowledged that he did not pull phone records for anyone other than Appellant. (RR8: 170). Elliott agreed that he never found a murder weapon, no body has ever been found, and that there are no eyewitnesses to any alleged crime. (RR8: 173-74).

Kelly Misfeldt told the jury that in December of 1991 he lived in the Lake Creek Parkway Apartments where Appellant and Vicki also lived. (RR9: 6). On December 29, 1991, Misfeldt saw Vicki outside of their apartments. (RR9: 8-9). Misfeldt remembered that Vicki was wearing a black jacket and black pants. (RR9: 11). Misfeldt saw Vicki's face and later, commented to Appellant that he saw that Vicki was back. (RR9: 12). Misfeldt learned that no one was aware that Vicki had returned so Appellant called the authorities to report what Misfeldt saw. (RR9: 12). Misfeldt gave a statement to the authorities the next day. (RR9: 12). In his statement, Misfeldt stated he was "99 percent sure that it

5

was her." (RR9: 17). On cross-examination, Misfeldt clarified that he knew Vicki from meeting her several times before and was only thirty-five feet away from her when he saw her on December 29, 1991. (RR9: 18). Misfeldt related that an officer from the Sheriff's Office met with him later and tried to get him to change his statement. (RR9: 19-20).

Morris Smith told the jury that in December of 1991, he lived in the same apartment complex as Vicki and Appellant. (RR9: 26-28). Smith was asked about a time when Appellant borrowed his car, but could not remember so had to have his memory refreshed with his statement from January 9, 1992. (RR9: 29-32). Even after reading his statement, Smith did not recall when Appellant borrowed the car. (RR9: 32). According to his statement, the car was damaged when Appellant returned it but Smith did not remember that fact when he testified. (RR9: 35). Smith state further that he did not "know a specific date… or when it was" that Appellant borrowed his car. (RR9: 37). On cross-examination, Smith admitted that his statement did not reflect that his car was damaged when Appellant returned it. (RR9: 42-43). Smith acknowledged that detectives searched his car a few days after Appellant borrowed it and found nothing suspicious. (RR9: 43).

6

Lana Faye Reed, Smith's sister, told the jury that in December of 1991, she lived with her brother at the apartment complex where Vicki and Appellant lived. (RR9: 51-52). Reed stated that on December 14, 1991, Smith babysat Vicki and Appellant's children for an hour to an hour and a half while Appellant borrowed Smith's car. (RR9: 52-56).

Robert James, a co-worker of Appellant's, stated to the jury that on one occasion he had a conversation with Appellant in which Appellant said that he had caught his wife cheating and thought about killing her, but that was not the Christian thing to do. (RR9: 70). On cross-examination, James admitted that no one else was present when Appellant allegedly made this statement and that he did not remember where they were when the statement was made. (RR9: 72). James admitted further that he thought other people might feel the same way if they caught their wife cheating. (RR9: 72). James acknowledged that this was the only conversation he had with Appellant about his relationship with his wife. (RR9: 74-75).

Mark Johnson, Vicki's brother, told the jury that in getting to know Appellant, they went to Appellant's brother's property. (RR9: 84). According to Johnson, there were large holes dug on the property and Appellant said that you could bury a body on that property and no one would ever find it. (RR9: 85).

7

Johnson also told the jury that Appellant said he would kill Vicki before he let her divorce him and take their children. (RR9: 85). On cross-examination, Johnson acknowledged that he never told Vicki what Appellant allegedly said because he did not take it seriously. (RR9: 94). Johnson also acknowledged that he never included the fact that there were holes on Appellant's brother's property in his statement to law enforcement. (RR9: 96-97).

Devane Clark testified that in 1992 he was employed with the DPS Crime Lab and went to Appellant and Vicki's apartment to collect evidence. (RR10: 8-10). Clark collected two samples of sheetrock from the home which appeared to be stained and did a presumptive test for blood, which was positive. (RR10: 16). Clark also sprayed portions of carpet with luminal. (RR10: 22-23). He tested a portion of the carpet and pad and the results showed a stain on both was presumptive for blood. (RR10: 25-26). Clark also examined Vicki's car, but did not find any indication of blood in the car. (RR10: 43-44). On cross-examination, Clark admitted that luminal is only a presumptive test and that it reacts with other organic substances and minerals. (RR10: 53-54). Luminal does not indicate how any blood got on a specific surface and does not measure the volume of blood either. (RR10: 54). Clark acknowledged that luminal also does not indicate the origin of the presumptive blood or how long it has been there.

8

(RR10: 54).   Clark acknowledged further that he did not know whether Vicki was alive or not, or if she died, how she died or who may have killed her.   (RR10: 81).

Oscar Kizzee testified that in 1992, he worked for DPS and examined a piece of sheetrock for latent fingerprints.   (RR10: 123).   Kizzee stated that the sheetrock appeared to have Appellant's palm print on it.   (RR10: 135-36).

Detective Robert Kee testified that he was assigned to investigate this case in 2011 and through his review of the case, learned that Appellant had been interviewed a number of times, but never confessed to doing anything to Vicki. (RR11: 35).   Investigators even attempted to have civilians try to get Appellant to confess, but he did not.   (RR11: 34-35).

Megan Clement, a forensic scientist, told the jury that she tested a sample of carpet and compared blood found on the carpet to the DNA profiles of Vicki's mother and father and determined that the blood could not be excluded as originating from the biological child of Vicki's parents.   (RR11: 49-50).

Heidi Prather told the jury that she is employed at the Missing Persons Clearing House.   (RR11: 52).   Prather told the jury that her organization is still actively looking for Vicki.   (RR11: 66).   Prather stated that she does not know if Vicki is dead or alive.   (RR11: 68).

9

Jane Burgett, a forensic scientist with DPS, told the jury that she examined a piece of sheetrock that was collected in 1992 and found a mixture which indicated more than one DNA profile. (RR11: 127). Burgett could not exclude Appellant as a contributor to the mixture. (RR11: 137). Burgett then tested a sample of carpet that Clark had indicated a presumptive result for blood, but Burgett found neither a stain nor any blood on the sample. (RR11: 139). She examined another portion of the carpet and found a partial DNA profile of an unknown female. (RR11: 140). Burgett also tested a piece of carpet padding and though she found stains, none of them were blood. (RR11: 142). On cross-examination, Burgett agreed that she could not say how any DNA was left on an item of evidence or whether the contributor was dead or alive when the DNA was left. (RR11: 143). Burgett also agreed that a mixture of DNA profiles could occur when DNA is left from two different people at two different times. (RR11: 144). In fact, DNA can come from several different sources including blood, semen, sweat, epithelial cells, saliva, mucous, and hair. (RR11: 145). Burgett stated that she expected to find mixtures of DNA where two people live together. (RR11: 145-46). Burgett stated that Appellant could not be excluded as a contributor to the sheetrock sample which contained a handprint, but that statistically, she could not say that Appellant was the contributor of the DNA

profile found on that sample beyond a reasonable degree of scientific certainty. (RR11: 149-50). Burgett acknowledged that as for the carpet sample, State's Exhibit 80, she tested several stains but none indicated the presence of blood. (RR11: 153-55). Portions of the carpet sample had previously been cut out and Burgett examined those, which were admitted as State's Exhibit 85. (RR11: 154). One of the stains contained human DNA, but was very difficult to see. (RR11: 157-58). Burgett clarified that the mixture of DNA profiles found on that stain was from two females. (RR11: 166). The other stain contained blood, but "was hard to see." (RR11: 160). Burgett stated that neither stain contained enough blood to indicate a person had died. (RR11: 160). Burgett could not testify that a crime occurred in this case or that Appellant committed an intentional act. (RR11: 170).

Dr. Arthur Eisenberg, a professor at University of North Texas, told the jury that he examined the carpet and padding collected from Vicki and Appellant's apartment and determined that Appellant was not a contributor to the DNA found on the carpet or the padding. (RR12: 15-16). Eisenberg determined that the probability that Vicki was the contributor to the DNA on the carpet and the padding was over ninety-nine percent. (RR12: 17). On cross-examination, Eisenberg admitted he could not say that the contributor of the DNA on the carpet

and padding was deceased. (RR12: 20). Likewise, he could not say that

Appellant committed any crime based on his findings. (RR12: 20).

## ISSUES PRESENTED

1. The evidence is insufficient to show Appellant committed the offense of murder.

2. The State violated Appellant's right to remain silent during jury argument.

3. The State violated Appellant's right to remain silent during questioning of the lead detective in this case.

4. The State violated Article 39.14 of the Texas Code of Criminal Procedure by failing to give proper notice of an expert witness.

## SUMMARY OF THE ARGUMENT

Appellant's first point of error should be sustained because the evidence is

insufficient to support the jury's finding of guilt where there is no evidence that

Appellant committed an intentional act or an act clearly dangerous to human life

which caused a death. Appellant's second point of error should be sustained

because the prosecutor improperly argued to the jury that Appellant would not

reveal the location of Vicki's body in violation of his right to remain silent

pursuant to the Fifth Amendment to the United States Constitution, the Texas

Constitution, the Texas Code of Criminal Procedure, and well-established

precedent. Appellant's third point of error should be sustained because the

12

prosecutor violated Appellant's right to remain silent by asking the lead detective in this case whether Appellant ever asserted his innocence in violation of Appellant's right to remain silent pursuant to the Fifth Amendment to the United States Constitution, the Texas Constitution, the Texas Code of Criminal Procedure, and well-established precedent. Appellant's fourth point of error should be sustained because the State violated Article 39.14(b) of the Texas Code of Criminal Procedure by failing to give proper notice of its intent to call an expert witness.

**ARGUMENT & AUTHORITIES**

I. ***The evidence is insufficient to show Appellant committed the offense of murder.***

The evidence is insufficient to show Appellant committed the offense of murder where the State failed to prove any of the elements of the offense. The Court of Criminal Appeals has held that the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 320 (1979), is the only standard that a reviewing court should apply when determining the sufficiency of the evidence. *Brooks v. State*, 323 S.W.3d 893, 896 (Tex. Crim. App. 2010). When reviewing the legal sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.

13

*Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896.

In order to prove its case beyond a reasonable doubt, the State was required to show that Appellant intentionally or knowingly caused Vicki's death or committed an act clearly dangerous to human life which caused her death. TEX. PENAL CODE § 19.02.

It is well-settled that circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "And while juries are permitted to draw multiple reasonable inferences, as long as each inference is supported by the evidence presented at trial, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Stobaugh v. State*, 421 S.W.3d 787, 862 (Tex. App.—Fort Worth, 2014), *citing Megan Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013). "If the evidence presented at trial raises 'only a suspicion of guilt, even a strong one, then that evidence is insufficient [to convict].'" *Id.*, *citing Richard Winfrey v. State*, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010).

In *Stobaugh*, the Second Court of Appeals found the evidence insufficient to support the defendant's conviction for murder where the State failed to prove a specific act which caused the victim's death. *Id*. at 864-65. Further, the Court

14

held that motive and opportunity alone are not enough to support a murder conviction.   *Id*. at 865.

Such is the case here.   The State failed to prove any of the elements of the offense and only proffered speculation as to motive and opportunity.   And while it is true that evidence of motive and opportunity helps link a defendant to wrongful conduct or is supportive of other evidence of such conduct, without evidence that wrongful conduct has occurred, there is nothing for motive and opportunity evidence to link the defendant to.   *Hacker v. State*, 389 S.W.3d 860, 871 (Tex. Crim. App. 2013).

The State's own witnesses agreed that there is no evidence that Appellant committed an intentional act or an act clearly dangerous to human life or even that a death occurred.   For example, Elliott, the lead detective in this case, agreed that he never found a murder weapon, no body has ever been found, and that there are no eyewitnesses to any alleged crime.   (RR8: 173-74).   Smith, Appellant's neighbor, testified that detectives searched his car a few days after Appellant allegedly borrowed it and found nothing suspicious.   (RR9: 43).   Clark testified that he did not know whether Vicki was alive or not, or if she died, how she died or who may have killed her.   (RR10: 81).

15

Detective Robert Kee testified that he was assigned to investigate this case in 2011 and through his review of the case, learned that Appellant had been interviewed a number of times, but never confessed to doing anything to Vicki. (RR11: 35). Investigators even attempted to have civilians try to get Appellant to confess, but he did not. (RR11: 34-35).

Heidi Prather of the Missing Persons Clearing House told the jury that her organization is still actively looking for Vicki and that she does not know if Vicki is dead or alive. (RR11: 66-68). In addition, Fryer and Tower both declared Vicki "missing." (RR8: 65), (RR8: 110).

DNA analyst Burgett stated that the amount of blood found in Appellant's apartment was "very hard to see" and that there was not enough blood to indicate a person had died. (RR11: 160). Further, Burgett could not testify that a crime occurred in this case or that Appellant committed an intentional act. (RR11: 160, 170). The other DNA expert, Dr. Eisenberg, also stated he could not say that Appellant committed any crime based on his findings. (RR12: 20).

On the other hand, the record reflects that Appellant cooperated with the investigation into Vicki's disappearance and there is evidence she is not, in fact, deceased. Proctor testified that Appellant was "very forthcoming" in answering his questions and allowed Proctor to look around the apartment. (RR8: 96).

16

When Proctor searched Appellant's apartment, with Appellant's consent, Proctor never saw any blood or blood spatter. (RR8: 98-99). In addition, Misfeldt testified that on December 29, 1991, he saw Vicki outside of her apartment. (RR9: 8-9). Misfeldt specifically remembered that Vicki was wearing a black jacket and black pants. (RR9: 11). Misfeldt was unequivocal that he saw Vicki's face and was "99 percent sure that it was her." (RR9: 17). Despite that fact, and the fact that Misfeldt has maintained his assertion that he saw Vicki for over twenty years, an officer from the Sheriff's Office met with him and tried to get him to change his statement. (RR9: 19-20).

Clearly, the jury had questions about whether the State had proven its case. They deliberated for more than two days and had several questions. First, the jury sent out a question which read, "definition of reasonable inference" and "definition/clarification on intentionally and knowingly." (CR: 183). The jury sent another note which read, "We are split 7-5 and haven't changed decisions since 2. Some of us are getting tired and reasoning skills are not so great. Do we keep deliberating or take a break to sleep? What about possibility of hung jury?" (CR: 187). On the day they finally reached a verdict, June 11, 2014, the jury sent a note that said "Can we convict on a lesser charge than murder or is it the only option at this time?" (CR: 195). The same day, the jury sent a note that

17

said, "We have come to an impass, we are still dead-locked at 7-5 and no new info or evidence is changing anyone's minds. What do we do?" (CR: 205). They received an "Allen Charge" on June 11, 2014 at 4:00 p.m. (CR: 206). The jury then found Appellant guilty of murder only a few hours later, presumably because they took the Court's supplemental charge as a directive to do so. (CR: 194).

The State's case was nothing more than pure conjecture and speculation. Not one witness testified that Vicki died or what her cause of death, if any, was. As discussed above, "while juries are permitted to draw multiple reasonable inferences, as long as each inference is supported by the evidence presented at trial, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Stobaugh*, 421 S.W.3d at 862; *Winfrey*, 393 S.W.3d at 771. That is clearly what happened in this case.

In the absence of any evidence to show Appellant's mental state, that he acted intentionally or knowingly, that a death in fact occurred, or that Appellant committed an act clearly dangerous to human life, no rational trier of fact could have found the essential elements of the offense of murder beyond a reasonable doubt. *Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 896. Accordingly, Appellant's first point of error should be sustained.

**II.** *The prosecutor violated Appellant's right to remain silent during jury argument.*

The prosecutor improperly argued to the jury that Appellant would not reveal the location of Vicki's body in violation of his right to remain silent pursuant to the Fifth Amendment to the United States Constitution, the Texas Constitution, the Texas Code of Criminal Procedure, and well-established precedent. During closing argument at the punishment phase of trial, the prosecutor argued the following:

> THE PROSECUTOR: One of the things that I do want you to take into consideration is the one thing that the Johnson family wants out of this, and the only thing they've ever wanted. And it's not blood, and it's not vengeance. It's that they want Vicki back. They want to give her a Christian burial. And they want her remains, and they want to be able to have a memorial service and funeral that they've never had for her. That's the one thing they've asked for. They didn't come here for vengeance and out for blood and out for him to deal with a life sentence. That's never been what's in their hearts. What was in their hearts was they just want Vicki back, and he refuses to do that. So I hope you'll remember that –

(RR15: 57-58).

> Appellant objected and preserved his objection as follows:

> DEFENSE COUNSEL: I object, Your Honor. She's commenting on his right to silence, right not to testify.

> THE COURT: Sustained.

> DEFENSE COUNSEL: Ask the jury to disregard, Your Honor.

19

THE COURT: The jury will disregard.

DEFENSE COUNSEL: Ask for a mistrial.

THE COURT: Denied.

(RR15: 58). *See* TEX. R. APP. P. 33.1.

There are four proper areas of jury argument: (1) summation of the evidence, (2) reasonable deductions drawn from the evidence, (3) answer to opposing counsel's argument, and (4) plea for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). An argument which exceeds these bounds is error. *Id.* That error is subject to reversal if, in light of the record as a whole, "the argument is extreme or manifestly improper, violative of a mandatory statute or injects new facts, harmful to the accused, into the trial." *Felder v. State*, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), *citing Bell v. State*, 724 S.W.2d 780 (Tex. Crim. App. 1986); *Cannon v. State*, 668 S.W.2d 401 (Tex. Crim. App. 1984).

A prosecutor's comment on a defendant's failure to testify offends both the Texas State and Federal Constitutions. U.S.CONST. AMEND. V; TEX. CONST. Art. I, § 10; *see also Garrett v. State*, 632 S.W.2d 350, 351 (Tex.Crim.App. 1982); *Nickens v. State*, 604 S.W.2d 101, 104 (Tex.Crim.App. 1980). A comment on the Defendant's failure to testify also violates statutory law. TEX. CODE CRIM. PRO.

20

Art. 38.08. ("…the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause."). If the complained-of remark called the jury's attention to the absence of evidence that only the testimony from the appellant could supply, the conviction must be reversed. *See Losada v. State*, 721 S.W.2d 305, 313 (Tex. Crim. App. 1986); *Angel v. State*, 627 S.W.2d 424, 426 (Tex. Crim. App. 1982); *Johnson v. State*, 611 S.W.2d 649, 650 (Tex. Crim. App. 1981). As a general rule, the adverse effect of an improper remark on the defendant's failure to testify during jury argument cannot be cured by an instruction to the jury. *Owen v. State*, 656 S.W.2d 458, 459 (Tex. Crim. App. 1983).

In the present case, the prosecutor argued that Appellant would not reveal the location of Vicki's body. This manifestly improper argument clearly violated Appellant's Fifth Amendment, State Constitution, and statutory right to remain silent. U.S.CONST. AMEND. V; TEX. CONST. Art. I, § 10; TEX. CODE CRIM. PRO. Art. 38.08. The prosecutor's statement only served to inflame the jury at the expense of Appellant's rights. Further, according to the prosecutor herself, the information sought was information only Defendant could have testified to. As such, Appellant is entitled to a reversal and his second point of error should be sustained. *See Losada*, 721 S.W.2d at 313; *Angel*, 627 S.W.2d at 426; *Johnson*,

611 S.W.2d at 650.

### III. *The prosecutor violated Appellant's right to remain silent during questioning of the lead detective.*

The prosecutor violated Appellant's right to remain silent by asking the lead detective in this case whether Appellant ever asserted his innocence in violation of Appellant's right to remain silent pursuant to the Fifth Amendment to the United States Constitution, the Texas Constitution, the Texas Code of Criminal Procedure, and well-established precedent. The prosecutor asked Elliott "In the 22 and a half years that you have worked with or dealt with Rex Nisbett, has he ever said to you 'Chief, I did not kill my wife?'" (RR8: 161).

The Fifth Amendment provides that "no person … shall be compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V. This right was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1 (1964). Texas Constitution article I, § 10, provides that "in all criminal prosecutions the accused shall … not be compelled to give evidence against himself." TEX. CONST. Art. I, § 10.

A prosecutor's comment on a defendant's failure to testify or give evidence against himself offends both the Texas State and Federal Constitutions. U.S. CONST. AMEND. V; TEX. CONST. Art. I, § 10; *see also Garrett v. State*, 632

22

S.W.2d 350, 351 (Tex.Crim.App. 1982); *Nickens v. State*, 604 S.W.2d 101, 104 (Tex.Crim.App. 1980). A comment on the Defendant's failure to testify also violates statutory law. Texas Code of Criminal Procedure Article 38.08 provides, "…the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause." TEX. CODE CRIM. PRO. Art. 38.08. If the complained-of remark called the jury's attention to the absence of evidence that only the testimony from the appellant could supply, the conviction must be reversed. *See Losada v. State*, 721 S.W.2d 305, 313 (Tex. Crim. App. 1986); *Angel v. State*, 627 S.W.2d 424, 426 (Tex. Crim. App. 1982); *Johnson v. State*, 611 S.W.2d 649, 650 (Tex. Crim. App. 1981). As a general rule, the adverse effect of an improper remark on the defendant's failure to testify cannot be cured by an instruction to the jury. *See Owen v. State*, 656 S.W.2d 458, 459 (Tex. Crim. App. 1983).

In the present case, the prosecutor's manifestly improper question clearly violated Defendant's Fifth Amendment, State Constitution, and statutory right to remain silent. U.S.CONST. AMEND. V; TEX. CONST. Art. I, § 10; TEX. CODE CRIM. PRO. Art. 38.08. The prosecutor's question, in which he asked whether Appellant had asserted his innocence, was a win-at-all costs question aimed at proving a case in which the State had no actual evidence, but rather only speculation and

23

conjecture. It is a tenet of our jurisprudence that an accused is not required to show his innocence, but that it is the burden of the State to prove him guilty. To reverse that burden, as the prosecutor did in this case, is unconstitutional. Under these circumstances, Appellant is entitled to a reversal. U.S.CONST. AMEND. V; TEX. CONST. Art. I, § 10; *see also Garrett*, 632 S.W.2d at 351; *Nickens*, 604 S.W.2d at 104. Accordingly, Appellant's third point of error should be sustained.

## IV. *The State violated Texas Code of Criminal Procedure Article 39.14 by failing to give proper notice of an expert wintess.*

The State violated Texas Code of Criminal Procedure Article 39.14(b) by failing to give notice of a State's expert witness. Article 39.14(b) provides:

> On motion of a party and on notice to the other parties, the court in which an action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence. The court shall specify in the order the time and manner in which the other party must make the disclosure to the moving party, but in specifying the time in which the other party shall make disclosure the court shall require the other party to make the disclosure not later than the 20th day before the date the trial begins.

TEX. CODE CRIM. PRO. Art. 39.14(b).

On July 17, 2013, Appellant filed a request for notice of State's expert witnesses. (CR: 48). The State subsequently filed five such notices. In three

24

of those notices, the State listed Megan Clement and listed "Tarrant County ME" as her place of employment, but did not provide her address. (RR10: 168-69, 176-77); (CR: 97, 106, 113, 117).

However, at trial, Clement testified that she is a forensic scientist employed at Cellmark Forensics. Clement, a DNA analyst, was part of the chain of custody for the carpet samples taken from Appellant's apartment as well as the blood vials containing Appellant's blood, and the blood of Vicki's parents, which was used for comparison. (RR10: 154-55). Clement was allowed to testify, over Appellant's objection, even though the State did not properly notice her as an expert in violation of Texas Code of Criminal Procedure Article 39.14(b). (RR10: 176-77).

Appellant was harmed by Clement's unnoticed testimony because he was not informed that instead of testifying as a medical doctor presumably about a cause of death as a medical examiner, Clement was actually a chain of custody witness that could affect the admissibility of all of the DNA evidence in this case. Appellant's substantial rights, including his right to a fair trial, were affected by the trial court's ruling allowing her testimony despite the fact that the State undeniably violated Article 39.14(b) of the Texas Code of Criminal Procedure. TEX. R. APP. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953

25

S.W.2d 266, 271 (Tex. Crim. App. 1997), *citing Kotteakos v. United States*, 328 U.S. 750, 776 (1946). Clearly, the admission of DNA evidence, and the only piece of "evidence" the State relied upon to argue a struggle occurred in Appellant's apartment, affected the jury's verdict. The jury spent days deliberating Appellant's guilt and only returned a verdict after receiving a supplemental charge from the Court. Because Clement was allowed to testify, the State was permitted to argue that there was blood evidence in the apartment and that argument necessarily impacted the outcome of Appellant's trial. *See King*, 953 S.W.2d at 271. For the foregoing reasons, Appellant's fourth point of error should be sustained.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays that this Court reverse the judgment and sentence in this case.

Respectfully submitted,

_____"/s/" Kristen Jernigan_____
KRISTEN JERNIGAN
State Bar Number 90001898
207 S. Austin Ave.
Georgetown, Texas 78626
(512) 904-0123
(512) 931-3650 (fax)
Kristen@txcrimapp.com

26

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Appellant's Brief has been hand-delivered to John C. Prezas, Appellate Attorney for the Williamson County District Attorney's Office, 405 Martin Luther King, Georgetown, Texas 78626, on May 8, 2015.

_____"/s/" Kristen Jernigan_____
Kristen Jernigan

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing document consists of 7,695 words in compliance with Texas Rule of Appellate Procedure 9.4.

_____"/s/" Kristen Jernigan_____
Kristen Jernigan